# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

LAKENIA MAHDI,                          )
                                        )
    Plaintiff(s),              )
                                        )
    vs.                        )    Case No. 4:19-cv-00183-SRC
                                        )
JULIAN BUSH, et al.,                    )
                                        )
    Defendant(s).              )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss [7]. The Court

grants the motion, in part.

## I.    BACKGROUND

On February 5, 2019, Plaintiff Lakenia Mahdi filed a complaint in this Court alleging

Defendants Julian Bush, Lyda Krewson, and John W. Hayden, Jr. violated Mahdi's First, Fourth,

and Fourteenth Amendment rights when St. Louis Metropolitan Police Department officers

arrested and charged Mahdi with resisting arrest and forced her to sign a civil liability release

agreement for any violations of her civil rights in exchange for a reduction of the resisting-arrest

charges.[1] Mahdi brings this suit on behalf of herself and as a putative class action. Mahdi

asserts the following claims: (1) deprivation of rights to petition the courts in violation of the

First Amendment pursuant to 42 U.S.C. § 1983 against all defendants on behalf of the class; (2)

declaratory judgment to void release contracts on public policy grounds against all defendants on

behalf of the class; and (3) deprivation of civil rights in violation of the Fourth and Fourteenth

---

[1] The caption of the Complaint lists the defendants as Julian Bush, St. Louis Metropolitan Police Department Chief of Police, and The City of St. Louis Mayor. Lyda Krewson, and John W. Hayden, Jr. are listed in the body of the Complaint as defendants.

Amendments against Hayden on behalf of Mahdi individually. Mahdi's brings her claims against Bush in his individual and official capacities, and her claims against Krewson and Hayden in their official capacities.

Mahdi asserts that Defendants have two policies and a custom that are the "moving force" behind alleged unconstitutional conduct of St. Louis Metropolitan Police Department ("SLMPD") officers. She first alleges the two policies: (1) the "Normal" policy pursuant to which the City "normally" charges suspects on whom excessive force is used with resisting arrest in municipal court (rather than state court); and (2) the "Rec" policy under which municipal prosecutors will plea bargain and "recommend" dismissal of municipal-court-resisting-arrest-charges only if a defendant will sign a liability waiver releasing the City from any civil lawsuits. Doc. 2, ¶¶ 42-44. Mahdi then alleges SLMPD has a "custom" of "using unjustified force with impunity in any case that an offender runs, pulls away, or protest [sic]." ("YRYP").[2] Doc. 2, ¶ 75.

In their Motion to Dismiss, Krewson, Hayden, and Bush, in their official capacities only (collectively, "Municipal Defendants"), seek to dismiss the claims against them for failure to state a claim. Specifically, Municipal Defendants assert Mahdi fails to state a claim in Count III because the count is premised on a theory of *respondeat superior* liability and Mahdi has not adequately pleaded that a policy, custom, or practice directly caused officers to use excessive force during her arrest.

---

[2] The Court granted Plaintiff's motion to consolidate in *White v. City of St. Louis, et al.*, 4:18-cv-00518 SRC, consolidating this case and three others, all filed by the same plaintiffs' counsel. In those consolidated cases, plaintiffs' counsel refer to this policy by the shorthand "you run, you pay."

## II.    STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." To meet this standard and to survive a FRCP 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court must liberally construe a complaint in favor of the plaintiff. *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. "A pleading that merely pleads labels and conclusions or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice."

*Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (internal quotations omitted). Although courts must accept all factual allegations as true, they are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679. Therefore, a court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* This "context-specific" task requires the court to "draw on its judicial experience and common sense." *Id.* at 679, 682. In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567. The Court must then determine whether the plaintiff plausibly alleges a violation of the law. *Id.* The well-pleaded facts must permit more than the "mere possibility of misconduct." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

## III.    ALLEGATIONS IN THE COMPLAINT

Under *Iqbal*, the Court must parse out the factual allegations that it must accept as true and the conclusory allegations it can disregard. Here, the Court summarizes all of Mahdi's allegations, factual and conclusory, to provide context to the Court's analysis below.

Mahdi alleges on January 14, 2016, SLMPD officers charged Mahdi with the municipal offenses of resisting arrest and interference with a police officer. Mahdi had no previous arrests or experience with the criminal justice system. While holding her one-month-old daughter, Mahdi used her cell phone to record three SLMPD officers while they, in Mahdi's estimation,

4

violated the civil rights of a group of ten- to twelve-year-old African-American boys. Mahdi alleges that to recover the cell phone video, an SLMPD officer arrested Mahdi and attempted to snatch her child from her arm. Mahdi "made clear she was not resisting arrest but her child was only one-month old." Mahdi's pleas were ignored and an SLMPD officer attempted to break her finger to gain access to her phone. According to Mahdi, eventually, the SLMPD officer "obtained Mahdi's cell phone, accessed, and deleted the video at the scene." An SLMPD officer took Mahdi's child and refused to allow her to feed the child. She was charged with resisting arrest and interference with a police officer.

Mahdi further alleges upon her release, Mahdi sent letters to her local alderman and the American Civil Liberties Union ("ACLU"), filed an internal affairs complaint, and wrote a civil rights attorney. No one could assist her before her court date on March 1, 2016. Mahdi could not afford legal counsel and she was not entitled to a public defender in municipal court. When Mahdi appeared at the municipal court on that date, she claims she told the prosecutor that the SLMPD officer arrested her because he wanted to delete the video footage on her cell phone. The prosecutor escorted Mahdi outside the courtroom and told her that she would go to jail if she didn't sign a document. She later learned this document was a release agreement. Mahdi continued to explain to the prosecutor that she was innocent and an officer deleted the video footage from her phone.

Mahdi alleges, the prosecutor explained that if Mahdi did not sign the release, regardless of the facts, the prosecutor could not dismiss or recommend the reduced charge of littering on public property. Mahdi continued to protest until the prosecutor told her he would charge her with felony resisting arrest and she would lose at trial and face significant jail time. The prosecutor failed to disclose to Mahdi that he did not have the authority to charge her with a

misdemeanor or felony resisting arrest. Unfamiliar with the legal system, Mahdi believed that the prosecutor could charge her with a felony crime.

Mahdi alleges she had approximately 60-120 seconds to decide to sign a blank release form. She was visibly angry and cried as she signed the form. She entered a written contract under the threat of criminal prosecution. She claims she signed a blank release form, and the prosecutor filled out the entire form outside of Mahdi's presence. The prosecutor did not permit Mahdi to adequately review or read the documents and she did not understand the language of the release before signing, nor was she advised to obtain an attorney. With a signed release agreement, the prosecutor claimed he was now authorized to recommend the reduced charge of littering on public property.

Mahdi alleges the municipal judge did not read the documents in open court nor did the judge ask Mahdi about the underlying facts of the arrest. After Mahdi's case was resolved, the prosecutor walked Mahdi out into the hallway and told her she could never speak of the facts of the arrest. The prosecutor told Mahdi if she made the incident public, she could still be charged with a felony resisting arrest and that, "you cannot come after us." Mahdi believed she could never speak about the circumstances of her arrest and described the process as "getting tricked making a deal with the devil."

According to Mahdi, several weeks later, an ACLU representative called Mahdi regarding her complaint about the January 14, 2016, incident. Mahdi refused to pursue any claim through the ACLU because of the prosecutor's threats that she would be charged with a felony if she pursued any claims against the City of St. Louis, and her understanding of the document she signed. Mahdi was so emotionally distraught she required medical attention. She suffered severe emotional distress as she struggled nursing her newborn daughter. Mahdi did not

voluntarily and knowingly sign her civil rights away.  She did not understand the terms of the release and agreement and signed it under the duress of criminal prosecution.

Mahdi alleges that an independent statistical analysis taken from data collected by the Missouri Attorney General's Office in 2015 shows that of 34,552 stops in the City, Blacks disproportionately were 7.5 times more likely to be charged with resisting arrest over Whites/Caucasians.[3]  The City ranked the second highest across the entire state of Missouri for disproportionately charging African Americans with resisting arrest.  By 2016, the report noted that Black/African Americans were still disproportionately charged with resisting arrest at four times the rate of Whites/Caucasians throughout the City.  Mahdi alleges these statistics demonstrate that across Defendants' police enforcement spectrum African Americans are charged with resisting arrest in the same unconstitutional patterns of unlawful stops and unlawful searches.  These patterns and practices have been concealed through the charging of resisting arrest in the City's municipal courts.

Mahdi alleges the excessive force the SLMPD used against her, and the unreasonable search and seizure of her phone, resulted from widespread custom in the SLMPD of YRYP ("you run, you pay") that was caused by the "Rec & Normal" policies.  According to Mahdi, the "Rec & Normal" policies were created in 2012, when the SLMPD updated a special order and directed officers to "normally" charge any resisting arrest charge in municipal court rather than state court when the offender did not use force or threaten to use force, i.e. the "Normal" policy.[4] Mahdi alleges the City also enforced a mandatory policy, called the "Rec Policy." In exchange

---

[3] Mahdi also alleges that the group Empower Missouri prepared a report on vehicle stops in Missouri.  Mahdi does not allege that the report pertains to SLMPD.
[4] Mahdi alleges that "Rec" and "Normal" are both official policies (Doc. 2, ¶¶ 43 and 44) but then refers to them as "practices and policies" (e.g. Doc. 2 at ¶ 45).  For purposes of the Motion to Dismiss, the Court assumes that, to the extent Mahdi alleges that "Rec" and "Normal" are "practices," she sufficiently alleges they constitute a custom or usage with the force of law and analyzes them accordingly.

for a city prosecutor's recommendation to dismiss a municipal-court charge for resisting arrest, the defendant signs a release of any civil liability that the City may have for violating the defendant's civil rights.

The written "Normal" policy states, in part:

Under normal circumstances, the defendant will be charged with a city ordinance violation of resisting arrest or interfering with an officer. The information application will be made at the City Counselor's Office.

The written "Rec" policy states, in part:

Resisting arrest & Interfering [sic] with a Police Officer charges cannot be amended without first obtaining a signed release from the defendant (See Sample).

Mahdi alleges the Rec & Normal policies directly and indirectly motivate SLMPD officers to use excessive force or make false arrests with the protection of the City's municipal court. Mahdi claims that this shield, "whether or not individually known to each SLMPD officer, was embedded in SLMPD training policies and practices."

According to Mahdi, prosecutors escorted unrepresented defendants into the hallway and explained that the prosecutor will dismiss or amend the charge if the defendants sign a blank form titled "Release." Generally, the prosecutors complete the remaining lines of the form and defendants "have only seconds to decide to release his/her rights or face up to 90 days in jail." Mahdi alleges "[w]ithout legal representation, many of the accused victims were pressured and forced to sign the release in exchange for their freedom, even when they were innocent of the facts."

Mahdi alleges she has not found a single case where a release agreement was legally enforced against a plaintiff in federal court. The release was created for its "psychological and marketing effects that resulted[] and continue to cause[] censorship and prior restraints on accused victims . . . to petition the courts for redress of civil rights violations. . . Since 1987,

8

prosecutors and legal practitioners have been aware of the psychological effects of release agreements."

Mahdi alleges the Rec & Normal policies caused and concealed a widespread pattern of civil rights abuses throughout the City that began with unlawful searches or excessive-use-of-force incidents and then escalated to illegal arrests and unjustified deadly force. Mahdi alleges if the individual runs, protests, or walks away from an officer, the officer will use excessive to deadly force as his/her primary means of detaining the individual. Mahdi alleges the Rec & Normal policies therefore have established widespread systematic patterns of unlawful arrests and searches as retaliation for recording or protesting an officer's misconduct.

Mahdi "defines SLMPD's widespread police misconduct as tyrannical practices" including the "use of excessive and unjustified deadly force when the accused victim runs, pulls away, or protests[,]" and "unlawful arrests to search and destroy evidence." The Complaint lists 17 examples of SLMPD "pattern cases" between 2013 through the present. Mahdi alleges by 2018, the pattern and practices were so pervasive and widespread that SLMPD officers beat an undercover officer and claimed the officer resisted arrest. According to Mahdi, the common denominator in all of these cases is that the accused victim allegedly pulled away, ran, protested, or walked away, *i.e.*, resisted arrest.

## IV.  DISCUSSION

In the Motion to Dismiss, Municipal Defendants argue Mahdi's Complaint fails to state a claim for municipal liability. Specifically, Municipal Defendants assert the Court should dismiss Mahdi's claim against Hayden in Count III because Mahdi has not adequately pleaded that a policy, custom, or practice directly caused officers to use excessive force during her arrest or to unlawfully search her phone.

## A.      Municipal Liability

Section 1983 of Title 42 allows individuals to bring causes of action for violations of the

U.S. Constitution.  The section states:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  A municipality can be sued under § 1983 for an officer's misconduct where

the misconduct is alleged to have implemented or executed a policy, ordinance, regulation,

decision, or custom of the municipality.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690

(1978).  A municipality cannot be held liable under § 1983 on a *respondeat superior* theory.  *Id.*

at 691.  When a plaintiff sues an officer in his/her official capacity, it "generally represent[s]

only another way of pleading an action against an entity of which an officer is an agent."

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  "[A]n official-capacity suit is, in all respects

other than name, to be treated as a suit against the entity."  *Id.* at 166.  Thus, the Court analyzes

the claim against Hayden, in his official capacity, as a claim against the City.

In *Monell*, and subsequent cases, the Supreme Court "require[s] a plaintiff seeking to

impose liability on a municipality under §1983 to identify a municipal 'policy' or 'custom' that

*caused* the plaintiff's injury."  *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397,

403 (1997) (citing *Monell*, 436 U.S. at 694, *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986),

*City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) (emphasis added).

A plaintiff cannot establish liability by only identifying conduct properly attributable to

the municipality; instead, a "plaintiff must also demonstrate that, through its deliberate conduct,

the municipality was the '*moving force*' behind the injury alleged.  That is, a plaintiff must show

that the municipal action was taken with the requisite degree of culpability and must demonstrate *a direct causal link* between the municipal action and the deprivation of federal rights." *Id.* at 404 (emphasis added). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, *rigorous standards of culpability and causation must be applied* to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405 (emphasis added); *see also Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017) ("The Supreme Court has set a high bar for establishing municipal liability under § 1983.").

Here, Mahdi alleges both "policies" and a "custom" – the "Rec & Normal" policies, and the YRYP custom. Doc. 2. Different analytical frameworks apply to municipal policies and customs. *Brown*, 520 U.S. at 404; *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). As the Eighth Circuit explained in *Mettler*, "a 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." 165 F.3d at 1204 (citing *Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998)). In contrast, a "custom" is a "practice [that] is so widespread as to have the force of law." *Brown*, 520 U.S. at 404. The Court discusses these different analytical frameworks below, in the context of the applicable pleading standards for policies and customs. First, the Court will discuss the applicable pleading standard and then apply that standard to Mahdi's Complaint.

### 1. Municipal Liability Pleading Standard under *Iqbal* and *Twombly*

Under the *Iqbal*/*Twombly* standard, a plaintiff must plead facts plausibly showing that the alleged policy or custom subjects the municipality to liability under *Monell*, *Canton*, and their progeny. *Iqbal*, 556 U.S. at 678-680. While courts recognize several different "policy" claims under §1983, Mahdi only alleges an "official policy" claim. *Szalba v. Brooklyn Park, Minn.*, 486

F.3d 385, 390 (8th Cir. 2007) (finding a municipality may be liable for an unconstitutional written policy, as in *Monell*, or when a plaintiff establishes a "policy" by "demonstrating that the inadequacies were a product of deliberate or conscious choice by policymakers"); Doc. 2, ¶¶ 43, 44. The elements of an "official policy" claim are: A deprivation of a plaintiff's constitutional rights that results from the municipality's official policy. It is not enough for plaintiff to show that the municipality employed a person who violated the plaintiff's rights. Plaintiff must show that the violation resulted from the municipality's official policy. 3rd Cir. Model Jury Instr. 4.6.3.

The elements of a "custom" claim are: "(1) existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" by the municipality's employees; "(2) deliberate indifference to or tacit authorization of such conduct" by the municipality's officials after notice of the misconduct; and (3) the pattern of misconduct was the "moving force" behind the plaintiff's injury. *Mettler*, 165 F.3d at 1204.

## 2. Application of the *Iqbal/Twombly* pleading standards to Mahdi's Complaint

As noted, Mahdi alleges that the combination of the Rec & Normal policies and the YRYP custom caused a deprivation of Mahdi's constitutional rights. The Court must analyze the "official policy" claim and the "custom" claim separately. *Mettler*, 165 F.3d at 1204. The Court also must analyze the two separate causal links Mahdi alleges: (1) that the Rec & Normal policies caused the custom of YRYP, and (2) that the YRYP custom caused the officers to in-fact use excessive force on Mahdi or to unlawfully search her phone. Doc. 2. The Court must apply "rigorous standards of culpability and causation" to these separate causal links. *Brown*, 520 U.S. at 405.

Before analyzing the specific elements of Mahdi's claims, *Iqbal* instructs the Court to first identify the allegations in the complaint not entitled to the assumption of truth, then to assume the veracity of the well-pleaded factual allegations, and finally, to determine if they plausibly give rise to an entitlement to relief. 556 U.S. at 679.

### a. Conclusory Allegations

*Iqbal* instructs courts to begin the motion-to-dismiss analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. In its analysis, the Court reviewed every allegation in Mahdi's Complaint to identify those that are "no more than conclusions" and those that are well-pleaded factual allegations.

Consistent with *Iqbal*, the Court does not state here *every* conclusory allegation in the 29-page complaint, instead giving the following as representative of the conclusions the Court does not assume as true: (1) "The Rec & Normal practices and policies caused and concealed a widespread pattern of civil rights abuses throughout the City"; (2) "Together the Rec & Normal practices and policies directly and indirectly motivated SLMPD officers to use excessive force or make false arrests with the protection of the City [] municipal courts"; and (3) "Today, the Rec & Normal policies and practices have established a tyrannical culture by the SLMPD throughout the City." Doc. 2, ¶¶ 45, 47, 48. These, and other allegations, lack "sufficient factual matter," and because they are no more than conclusions, they "are not entitled to the assumption of truth. *Iqbal,* 566 U.S. at 678, 679.

### b. Well-Pleaded Factual Allegations

Under *Iqbal*, the Court next assumes the veracity of Mahdi's well-pleaded factual allegations. 556 U.S. at 679. *Iqbal*, likewise, does not require the Court to state here every well-

pleaded factual allegation in the lengthy complaint; the Court accordingly gives these examples of Mahdi's well-pleaded factual allegations that the Court assumes as true: In 2012, the City and the SLMPD created, and enforced, the Rec & Normal policies. The SLMPD trained officers to charge any resisting arrest in municipal court when the offender did not use force or threaten to use force. In enforcing the Rec & Normal policies, prosecutors escort unrepresented defendants into the hallway of municipal court and explain the charge will be dismissed or amended if the accused signs the release form. On January 14, 2016, Mahdi recorded on her cellphone an incident involving three SLMPD officers and a group of African-American boys. An SLMPD officer arrested Mahdi and attempted to break her finger to gain access to her phone while she was holding her one-month old infant. The officer obtained her cell phone, accessed, and deleted the video at the scene. The officer refused to allow her to feed her infant. The officer arrested Mahdi and charged her with resisting arrest and interference with a police officer. Mahdi was pressured to sign a release, signed it, and did not understand its contents.

### c. Plausibility of Mahdi's Claim to Relief

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – that the pleader is entitled to relief." *Id.* "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably." *Brown*, 520 U.S. at 406-07 (italics in original).

This Court focuses not on whether allegations are "extravagantly fanciful" but rather whether they "contain any factual allegation sufficient to plausibly suggest" that: a) the Rec & Normal policies were the "moving force" behind, or provided the "direct causal link" to, the YRYP custom, and b) the YRYP custom in turn was the "moving force" behind or provided the "direct causal link" to the use of excessive force against Mahdi and the unlawful search and seizure of her phone. *Iqbal*, 556 U.S. at 681; *Monell*, 436 U.S. at 694; *Canton*, 489 U.S. at 389.

### i.  Allegations of YRYP

To plead a plausible case of municipal liability based on a custom, Mahdi first must allege the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" by the City's employees. *Mettler*, 165 F.3d at 1204; *see also Brown*, 520 U.S. at 404. Because a municipality cannot be liable on a *respondeat superior* theory, "the pattern of unconstitutional conduct must be so pervasive and widespread so as to have the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (internal quotations and citations omitted).

In attempting to allege a pattern, Mahdi uses prior incidents of alleged misconduct. Doc. 2, ¶¶ 68-73. The Eighth Circuit has not directly addressed the quantum of "continuing, widespread, persistent" conduct a plaintiff must allege to satisfy the *Iqbal* standard in this context, though it has held that isolated incidents do not suffice and that allegations of "many" incidents do establish liability. *Wilson v. City of N. Little Rock*, 801 F.2d 316, 322-23 (8th Cir. 1986); *Harris v. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987). The Fifth Circuit held that when a plaintiff uses prior incidents to allege a pattern, the prior incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [the

municipality's] employees." *Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (*en banc*). In affirming summary judgment on an official policy claim, the Fifth Circuit stated that "[a] pattern requires similarity and specificity[,]" explaining that the prior incidents must point to the specific violation at issue, be sufficiently numerous, and provide context that would show a pattern. *Peterson v. Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009).

Both the Eighth and Fifth Circuits reason that to hold municipalities liable for conduct that does not rise to the level of continuing, widespread frequency would create the *respondeat superior* liability that the Supreme Court repeatedly rejected in §1983 actions. *Brewington*, 902 F.3d at 801; *Peterson*, 588 F.3d at 847-851. In *Pineda v. City of Houston*, cited approvingly by the Eighth Circuit in *Brewington,* the Court held that eleven incidents of police misconduct failed to establish an unconstitutional pattern. 291 F.3d 325, 329 (5th Cir. 2002).

Without determining exactly how many instances or what details would suffice to plausibly plead a pattern of misconduct, the Court finds that Mahdi's allegations fail to do so. Mahdi alleges 17 instances of allegedly similar misconduct[5] over a six-year time period, an average of fewer than three instances per year for a police department serving a city with a population, during the relevant time period, of over 319,000, according to the 2010 U.S. Census. U.S. Dep't of Commerce, 2010 Census of Population and Housing (2012); *see also Town of Fletcher v. Hickman*, 165 F. 403, 406 (8th Cir. 1908) (taking judicial notice of the census data for the population of a city); *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) ("While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider . . . items subject to judicial notice, matters of public record . . .").

---

[5] See section IV(A)(2)(d) for the Court's analysis on the similarity of Mahdi's allegations of prior incidents.

Mahdi fails to plead any facts creating the plausible inference that three instances per year over a six-year period, in a major metropolitan police department serving a city of over 319,000 residents, constitutes a pattern or practice. Publicly-available data[6] could provide necessary context to evaluate the plausibility of Mahdi's allegations. *Friends of Lake View Sch. Dist. Incorporation No. 25 of Phillips Cty. v. Beebe*, 578 F.3d 753, 762 n. 12 (8th Cir. 2009) (considering publicly-available data in deciding a plaintiff failed to state a claim upon which relief could be granted). With respect to the six-year period, Mahdi fails to allege the population of the City, the number of officers on the SLMPD, the number of stops made or encounters involving SLMPD officers, the number of complaints, claims, or lawsuits asserting excessive use of force in similar circumstances, whether or how those complaints, claims, or lawsuits were resolved, or other publicly-available data from which the Court could "infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Mahdi does allege a report that analyzed 34,552 stops made by SLMPD in 2015 but does not allege whether the 34,552 constitute all of the stops made in 2015. Assuming that 34,552 constitutes the sum-total of stops made by SLMPD in 2015, and further assuming that SLMPD made a similar number of stops in each of the other five years, the total stops in the relevant period is over 207,000. The 17 incidents Mahdi alleges constitute approximately 0.008 percent of the total stops, which common sense tells does not constitute a pattern, much less "continuing, widespread, persistent" conduct. *Harris*, 821 F.2d at 504.

Contrast Mahdi's Complaint with other cases where the plaintiffs did sufficiently allege a widespread practice. For example, in *Simpson v. Ferry*, the district court found that the plaintiff sufficiently pleaded a widespread practice of use of excessive force when the plaintiff included

---

[6] The U.S. Census Bureau makes its data available on its website (http://factfinder.census.gov) and Missouri's Sunshine Law makes a host of information available to the public. *See* Mo. Rev. Stat. § 610.011.

in the complaint statistics as to how many lawsuits were brought against the City of Philadelphia during a five-year period, how much in damages were paid for these lawsuits, and that approximately one-third of the lawsuits included allegations of excessive force.  202 F. Supp. 3d 444, 453 (E.D. Pa. 2016).  And, in *Flanagan v. City of Dallas, Texas*, the district court found that the plaintiff sufficiently pleaded a widespread practice of use of excessive force when the plaintiff included in the complaint allegations that Dallas was at the top of the list of police misconduct statistics in the South, the total number of officer-involved shootings, the number of grand juries convened to investigate police misconduct, the number of unarmed individuals killed by Dallas police officers, and the number of open internal affairs investigations into officer-involved shootings.  48 F. Supp. 3d 941, 953 (N.D. Tex. 2014).

*Simpson* and *Flanagan* inform the Court's conclusion that Mahdi has not pleaded facts from which the Court can plausibly infer more than the mere possibility of widespread misconduct.  Here, the Complaint includes conclusory allegations with no facts to support the conclusions.  Ignoring Mahdi's conclusory allegations, *Twombly*, 550 U.S. at 555. *Iqbal*, 556 U.S. at 678, the Court finds that Mahdi fails to sufficiently plead a custom, pattern, or practice of use of excessive force by SLMPD officers against individuals protesting their arrests; Mahdi fails to sufficiently plead the YRYP custom.

### ii.      Allegations of Causation

To state a plausible claim for municipal liability under § 1983, Mahdi also must plead facts from which the Court can infer that: (1) the Rec & Normal policies were the "moving force" behind the YRYP custom; and (2) the YRYP custom was the "moving force" behind the officer's use of excessive force against Mahdi and the unlawful search and seizure of her phone. *Monell*, 436 U.S. at 694; *Canton*, 489 U.S. at 389; *see also Brown*, 520 U.S. at 404.  As the

Supreme Court stated: "our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton,* 489 U.S. at 385. This is a "rigorous standard[] of causation." *Brown*, 520 U.S. at 404-05; *see also Connick v. Thompson*, 563 U.S. 51, 75 (2011) (Scalia, J., concurring).

Mahdi pleads no facts from which the Court can infer a direct causal link, instead she resorts only to conclusory allegations that "disentitles them to the presumption of truth[]." *Iqbal*, 556 U.S. at 681. Ignoring those conclusions, as the Court must, Mahdi's complaint lacks any facts from which the Court can infer a "moving force/direct causal link" between the Rec & Normal policies and the alleged YRYP custom. Mahdi's complaint similarly lacks any facts from which the Court could infer a "moving force/direct causal link" between the alleged YRYP custom and the alleged unconstitutional conduct by the officer.

### d.      Failure to Plead a Pattern or Practice of Misconduct

As explained in section IV(A)(2)(c) above, Mahdi's well-pleaded allegations lack facts from which the Court can infer a pattern or practice of misconduct. But even if the Court were to accept all of Mahdi's allegations, factual and conclusory, as true, they still fail to establish a plausible claim to relief. Mahdi's allegations regarding the 17 instances do not include specifics to plausibly establish a widespread pattern of officers using excessive force against individuals who "protest unlawful arrests." For example, the first instance alleged states:

> SLMPD Officer Marcus Biggins discharged his weapon on two separate occasions then charged the suspect with resisting arrest in violation of Muni Code. 15.10.10 and Defendants' Rec policy required a release of civil rights. The suspect was not a threat. The officer reported there were no injuries.

Doc. 2, pg. 15. This recitation includes no facts to establish excessive use of force, what caused the alleged excessive use of force, that the individual protested an unlawful arrest, that the

individual was presented with a release agreement for civil liability, whether the individual signed the release, or whether the officer was ever investigated for his alleged misconduct. Mahdi's allegations about the other 16 instances similarly lack facts from which the Court could infer the conclusions Mahdi seeks to draw.

Mahdi next argues that *Town of Newton v. Rumery*, 480 U.S. 386 (1987), confirms release agreements can suppress, conceal, and establish customs of police misconduct. The *Rumery* case discusses the enforceability of a release agreement waiving an individual's right to bring a § 1983 suit. 480 U.S. at 392. Justice Powell, on behalf of a *plurality* of the justices, wrote that in some cases there may be a substantial basis for the concern that release agreements "tempt prosecutors to trump up charges in reaction to a defendant's civil rights claim, suppress evidence of misconduct, and leave unremedied deprivations of constitutional rights." *Id*. at 394.

In declining to hold release agreements *per se* unenforceable, the Court in *Rumery* reasoned that "criminal defendants are required to make difficult choices that effectively waive constitutional rights." 480 U.S. at 393 (internal citations omitted). "We see no reason to believe that release-dismissal agreements pose a more coercive choice than other situations we have accepted." *Id*. (internal citations omitted). The Court continued: "In many cases a defendant's choice to enter into a release-dismissal agreement will reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action." *Id*. at 394. *Rumery* thus does not raise Mahdi's allegations to the level of plausibility.

### e.     Failure to Plead "Moving Force" Allegations

As explained in section IV(A)(2)(c)(ii) above, Mahdi's well-pleaded allegations lack facts from which the Court could infer the Rec & Normal policies were the "moving force"

behind or had a "direct causal link" with the use of force.  But even if the Court were to accept all of Mahdi's allegations as true, they still fail to establish a plausible claim to relief.

Using the framework applied in *Iqbal*, the Court finds Mahdi fails to allege facts sufficient to state a claim to relief that is plausible on its face because she fails to establish a direct causal link between the policy and SLMPD's use of excessive force.  Mahdi must allege facts to support her contention the Rec & Normal policies were the "moving force" behind the SLMPD's practice of excessive use of force and the officer's use of excessive force against Mahdi.  Mahdi's Complaint includes many conclusions that the policies caused the use of excessive force by SLMPD officers.  But she fails to include specific facts to support those conclusions.  Mahdi alleges that: (1) "The Rec & Normal practices and policies caused and concealed a widespread pattern of civil rights abuses throughout the City"; (2) "Together the Rec & Normal practices and policies directly and indirectly[7] motivated SLMPD officers to use excessive force or make false arrests with the protection of the City municipal courts"; and (3) "Today, the Rec & Normal policies and practices have established a tyrannical culture by the SLMPD throughout the City."  Doc. 2, ¶¶ 45, 47, 48.  Accepting these conclusory allegations as true, they do not provide facts from which the Court could plausibly conclude that either the Rec & Normal policies caused the YRYP custom or that the YRYP custom caused the alleged unconstitutional conduct.

### f.      Obvious Alternative Explanations

In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly

---

[7] Because *Monell*, *Canton*, and their progeny require a "direct causal link," the Court chooses not to consider Mahdi's allegation of "indirect" motivation. *Iqbal*, 556 U.S. at 682; *Brown*, 520 U.S. at 403.

unconstitutional conduct. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567. The Court must then determine whether the plaintiff plausibly alleges a violation of the law. *Id*.

Common sense and experience show that many "obvious alternative explanation[s]" exist for implementation of the Rec & Normal policies other than to conceal civil rights abuses. For example, the Rec & Normal policies may be driven by municipal economics. Prosecuting cases (resisting arrest or otherwise) in municipal court rather than circuit court may result in the City, rather than the State, receiving any fines imposed. *See* Mo. Rev. Stat. § 479.080 (fines and costs for violations of municipal ordinances are deposited into the municipal treasury); Mo. Rev. Stat. § 478.434 (fines imposed in circuit court for misdemeanors are deposited into the city treasury); Mo. Const. Art. 9, § 7 (fines paid for a breach of a state penal law are paid to school funds and distributed to the schools of various counties). Likewise, requiring a civil liability release as a condition of a plea bargain reduces the City's economic exposure and use of resources, including resources to defend cases. Other plausible explanations exist for both the Rec & Normal policies, such as achieving efficiency in processing a high volume of municipal-court cases. The Court finds that Mahdi's allegations fall short of what would be required to establish, at the pleading stage, plausibility.

In this case, the Court also has to determine whether on the facts pleaded, "obvious alternative explanations" exist for the officer's conduct. In *Twombly*, the Court examined obvious alternative explanations for the defendants' conduct in not competing with one another, and in *Iqbal* the Court examined obvious alternative explanations for both the conduct alleged (arrests of Arab Muslims) and the motivation for the arrests (whether or not it was the "purposeful invidious discrimination respondent ask[ed] the Court] to infer[.]"). 550 U.S. at 567-68; 556 U.S. at 682. Here, the Court would need to examine whether obvious alternative

22

explanations exist for the officer's conduct (the alleged excessive use of force and unlawful search and seizure of Mahdi's phone) and for the "moving force" causing the conduct, but the Complaint contains few factual allegations from which the Court could do so.  Even assuming no "obvious alternative explanations" exist for the officer's conduct, the Court would nonetheless dismiss the Complaint as to Hayden (in his official capacity), and consequently, the City, for failure to state a claim, as explained in sections IV(A)(2)(c)-(e), above.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [7] is **GRANTED**, in part.  The Court dismisses Count III against John W. Hayden, Jr. in his official capacity.  In their Motion to Dismiss [7], Defendants make several additional arguments. The Motion remains pending as to those other arguments.

So Ordered this 14th day of November, 2019.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**